1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TUANJA EDWARD ANDERSON,

11              Plaintiff,                    No. CIV S-05-1868 FCD CMK P

12        vs.

13   JACQUES C. HIRSCHLER, et al.,

14              Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action

17   against defendant Hischler, defendant Fox, and defendant Palagummi.  The case is before the

18   undersigned pursuant to Local Rule 302(c) for findings and recommendations on defendants'

19   motion for summary judgment. Fed. R. Civ. P 56(c).  Plaintiff has not filed a response to

20   defendants' motion for summary judgment.

21   I.    Standard of Review

22              On a motion for summary judgment pursuant to Rule 56(c), the court must

23   accept the evidence of the non-moving party as true and draw all reasonable inferences of fact in

24   favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

25   The moving party bears the burden of demonstrating that there exists no genuine issue as to any

26   material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex

1

1  Corp v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P 56(c)).  If the moving party

2  meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue

3  as to any material fact does actually exist.  See Matsushita Elec. Indus. Co. V. Zenith Radio

4  Corp., 475 U.S. 574, 586 (1986).  The party opposing summary judgment may not rest on

5  conclusory allegations, but must set forth specific facts showing that there is a genuine issue of

6  material fact.  See Mosher v. Saalfeld, 589 F.2d 438, 422 (9th Cir. 1978)(involving a pro se

7  litigant); see also Anderson, 477 U.S. at 586 n. 11.  When the record taken as a whole could not

8  lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material

9  fact for trial.  See Matsushita, 475 U.S. at 587.

10          On October 21, 2005, the court advised plaintiff of the requirements for opposing a

11  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

12  F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

13  I.    Background

14          At all times relevant to this action, plaintiff was incarcerated at Deuel Vocational

15  Institute (DVI).   Taken in a light most favorable to plaintiff the facts are as follows.  Plaintiff's

16  vision is impaired.  He alleges that he is blind in his left eye.  He states that defendants denied

17  him medical care by denying his requests to be classified as vision impaired under the Americans

18  with Disabilities Act (ADA).  He alleges that he has not received "eye care" that was promised

19  him.  He states that defendant Hischler denied his appeals regarding his vision problem at the

20  second level.  He also appears to allege that defendants violated his rights by failing to

21  recommend transferring him to another institution where he would be safer.

22          Defendants have presented evidence showing that plaintiff first mentioned his

23  visual impairment in his left eye in July 2004, approximately four months after arriving at DVI.

24  (Defs.' Undisputed Facts (doc. 38) at ¶ 4 & 5.)   After being seen by two other doctors, plaintiff

25  was referred to an ophthalmologist.  (Id. at 6 & 7.)  On August 18, 2004, defendant Fox requested

26  ///

1  that plaintiff be granted an ophthalmologist consultation; that request was approved on September

2  1, 2004.  (Id. at ¶ 8.)

3          Plaintiff was examined by defendant Fox on August 27, 2004 because he fell while

4  playing basketball and hurt his back.  (Id. ¶ 9.)  Plaintiff's basketball injury had nothing to do

5  with his vision problem.  Defendant Fox ordered that plaintiff be given a ducat for a series of

6  spinal x-rays and ordered a follow-up visit for a week later.  (Id. ¶ 10.)  On September 27, 2004,

7  defendant Fox completed a Disability Placement Program Verification Form, which noted

8  plaintiff's mobility restrictions stemming from back problems.  Plaintiff was able to walk 100

9  yards without pause or assistance, so he had no housing restrictions.  Dr. Fox ordered a cane for

10 plaintiff, but noted that plaintiff had no housing restrictions.  (Id. at ¶ 12.)  Plaintiff filed a

11 grievance on October 3, 2004, alleging visual impairment, scoliosis, and mental health problems.

12 Plaintiff alleged that he was in pain, was not receiving proper medical care, and requested a

13 transfer to a medical facility.  (Id. at ¶ 13.)  Dr. Fox denied plaintiff's appeal, confirming that

14 plaintiff's ADA status was granted, but noting that his disability did not affect his housing

15 placement.  (Id. at ¶14.)

16         Plaintiff submitted another grievance December 4, 2004 complaining that he had

17 not received his ADA paperwork.  Plaintiff was notified of his classification as mobility impaired.

18 (Id. at ¶ 18.)  Plaintiff submitted a grievance on December 22, 2004 claiming that he did not see

19 well because his eyes were "damaged."  He requested A-1-A privileges, a vision impaired vest,

20 and placement in a facility for inmates who qualify under the ADA.  (Id. at ¶ 19.)  Plaintiff's

21 requests were partially granted; he was referred for evaluation by an ophthalmologist and given a

22 white cane. The requests for A-1-A status and transfer were denied. (Id. at ¶ 20.)

23         Plaintiff submitted a grievance on January 4, 2005 claiming that he should be

24 allowed A-1-A privileges based on his disability.  The grievance was denied on the grounds that

25 plaintiff's disability did not affect his housing placement.  (Id. at ¶ 22.)

26         Defendant Hischler referred plaintiff to an ophthalmologist on February 1, 2005.

1 Defendant Hischler completed a disability placement on February 17, 2005, noting that plaintiff's

2 vision was being evaluated for characterization as a disability under the ADA. (Id. at ¶ 23.)

3 Medical records from the evaluation note that plaintiff's corneas were clear, but he had minimal

4 improvement after cataract extraction. Plaintiff was ordered to return in 4 months, but, the

5 evaluating physician ordered him to be seen prior to that for glasses. (Id. at ¶ 25.)

6         Plaintiff filed a reasonable modification request on April 16, 2005, stating that

7 blindness in his left eye had been verified by an outside physician. He also requested A-1-A

8 status and wanted a pair of glasses to protect his right eye. (Id. at ¶ 26.) Defendant Fox ordered

9 glasses for plaintiff on May 3, 2005. Plaintiff was notified in a response to his grievance that

10 glasses had been ordered and the state would pay for them. (Id. at ¶ 27.)

11         Plaintiff filed a reasonable modification request on May 24, 2005, noting blindness

12 in his left eye and requesting extended stay credits and a yellow vision impaired vest. Defendant

13 Palagummi interviewed plaintiff on June 27, 2005, and she noted that his left eye was good and

14 that he did not meet the ADA's visual impairment requirements. (Id. at ¶ 28.) Dr. Hischler

15 denied plaintiff's request at the second level, noting that plaintiff did not qualify for ADA status.

16 The grievance was denied at the director's level. (Id. at ¶ 29 & 30.)

17         Plaintiff was transferred to Mule Creek State Prison on July 15, 2005. He filed

18 another request for modification or accommodation requesting glasses, a vision impaired vest and

19 to be qualified as ADA vision impaired. Plaintiff was examined, found legally blind, and issued

20 a disability placement program verification for vision impairment qualified under the ADA.

21 (Id. at ¶ 31-33.)

22 III.    Discussion

23         Defendants move for summary judgment on the grounds that plaintiff cannot

24 establish that defendants were deliberately indifferent to his medical needs in violation of the

25 Eighth Amendment; that the denial of plaintiff's grievance does not state a constitutional claim;

26 that defendant cannot establish a violation of the ADA and; that plaintiff is not entitled to the

1  injunctive relief of being transferred to a medical facility.  Defendants further assert that, even if
2  they are not entitled to summary judgment,  they are shielded from liability by qualified
3  immunity.

4          A.      Denial of Grievance

5          The Ninth Circuit has stated that inmates have no legitimate claim of entitlement
6  to a prison grievance procedure.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).
7  Accordingly, defendants are entitled to summary judgment on plaintiff's claims that his civil
8  rights were violated when his grievances were denied.

9          B.      Transfer to Another Facility

10          Inmates do not have a constitutional right to be housed at a particular facility or
11  institution or to be transferred, or not transferred, from one facility or institution to another.  See
12  Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25
13  (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).  Accordingly,
14  plaintiff's civil rights were not violated when defendants denied his requests for a transfer, and
15  plaintiff's request for a transfer to another facility must be denied.

16          C.      Denial of Medical Care

17          Deliberate indifference to a prisoner's medical needs can be demonstrated in two
18  ways: by prison officials denying, delaying or intentionally interfering with medical treatment or
19  by the manner in which prison physicians provide medical care. Estelle v. Gamble, 429 U.S. 97
20  (1976); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  Deliberate indifference
21  exists only when prison officials know of and disregard an excessive risk to inmate health or
22  safety.  Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also, McGuckin v. Smith, 974 F.2d
23  1050, 1060 (9th Cir. 1992) (overruled on other grounds) (stating that "a defendant must
24  purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for
25  deliberate indifference to be established").

26          The indifference to a prisoner's medical need must be substantial because

1    inadequate treatment due to negligence, inadvertence or differences in judgment between an

2    inmate and medical personnel does not rise to the level of a constitutional violation. <u>Franklin v.</u>

3    <u>Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981). "Mere negligence... in treating a medical

4    condition, without more, does not violate a prisoner's Eighth Amendment right." <u>See</u> <u>Toguchi v.</u>

5    <u>Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004).   A prisoner who makes a claim of deliberate

6    indifference to a serious medical condition based on delay must show that the delay resulted in

7    substantial harm. <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335 (9th Cir. 1990).

8         The allegations in plaintiff's complaint do not support a claim of deliberate

9    indifference in violation of the Eighth Amendment against defendants.   Plaintiff alleges that

10    defendants disregarded his blindness in his left eye because he can see out of his right eye, and he

11    alleges that he did not receive eye care which was promised him.   However, defendants have

12    produced evidence which shows that plaintiff was treated for his vision problems.   Plaintiff was

13    examined several times in response to complaints about vision problems.   He was referred to

14    outside ophthalmologists for evaluations and was granted reading glasses.   This response shows

15    that plaintiff received medical treatment pertaining to his medical needs.   <u>See</u> <u>Wood</u>, 900 F.2d at

16    1334.   Plaintiff has not shown that defendants knew of and disregarded an excessive risk to his

17    health and safety.   <u>See</u> <u>Toguchi</u>, 391 F.3d at 1057.   Accordingly, the court finds that defendants

18    are entitled to summary judgment on plaintiff's Eighth Amendment claim.

19        D.    <u>Denial of Vision Problem as Qualifying Disability Under the ADA</u>

20         At the onset, the court notes that individual defendants may not be sued in their

21    individual capacities under Title II of the ADA;  they may be sued in their official capacities

22    because suing an individual in his official capacity is treated the same as suing the entity itself.

23    <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Walker v. Snyder</u>, 213 F.3d

24    344, 346 (7th Cir.2000) ("[A]s a rule there is no personal liability under Title II..."). Therefore, to

25    the extent that plaintiff sues any defendants in their individual capacity for ADA violations,

26    defendants are entitled to summary judgment.

1    With respect to plaintiff's ADA claims against defendants in their official

2  capacities, he appears to allege that defendants discriminated against him by failing to document

3  his vision problem as a qualifying disability under the ADA.  Plaintiff does not allege that he

4  suffered any injury as the result of being denied disability status under the ADA nor does he

5  allege that defendants discriminated against him in any way based on his alleged disability.

6    The ADA prohibits discrimination on the basis of disability.  Specifically, the

7  ADA provides that no qualified individual with a disability shall be excluded from participation

8  in or denied benefits or services of a public entity on the basis of their disability.  See 29 U.S.C. §

9  794.  The ADA applies to inmates in state prisons.  See Pennsylvania Dept. of Corr. V. Yeskey,

10  524 U.S. 206, 210 (1998).  To establish an ADA violation, a plaintiff must show that he is a

11  qualified individual with a disability and that he was denied participation in or otherwise

12  discriminated against with regard to a public entity's services programs and activities and that the

13  exclusion or discrimination was based on his disability.  See Lovell v. Chandler, 303 F.3d 1039,

14  1052 (9th Cir. 2002).

15    Plaintiff has alleged no facts to support his contention that he was denied ADA

16  status or participation in any program based on a qualified disability.  He has not alleged any facts

17  showing discrimination on the basis of his disability.  The evidence presented by defendants

18  shows that none of the specialists who examined plaintiff found him to be legally blind.  See

19  Anderson, 477 U.S. at 256-57 ("once the moving party demonstrates the absence of a genuine

20  issue of material fact, the burden shifts to the non-moving party to produce evidence sufficient to

21  support a jury verdict).  Instead, the evidence shows that plaintiff was given canes and glasses and

22  was able to engage in physical sports such as basketball.  Even assuming that plaintiff was later

23  found to be legally blind, he does not assert any facts which support his assertion that he was

24  denied access to any programs or services based on his alleged disability.  Accordingly, the court

25  finds that defendants are entitled to summary judgment on plaintiff's ADA claim against them.

26  ///

E.   <u>Qualified Immunity</u>

As the court has found that defendants are entitled to summary judgment, it is not necessary to address their qualified immunity claim.

IV.   <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that:

1.  Defendants' motion for summary judgment be granted.

2.  Plaintiff's request for injunctive relief in the form of a transfer to a medical facility be denied.

3.  Plaintiff's complaint be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   April 19, 2007.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE